**Entered on Docket
February 21, 2017**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: February 21, 2017

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>FIRST KOREAN CHRISTIAN CHURCH OF SAN JOSE ("FKCC"),<br><br>　　　　　　　　Debtor.<br>_____<br>FIRST KOREAN CHRISTIAN CHURCH OF SAN JOSE,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>DONG WUK KIM, MYUNG IL YOUM, and KOREAN EVANGELICAL CHURCH OF AMER.<br><br>　　　　　　　　Defendants.<br>_____<br>FIRST EVANGELICAL CHURCH OF AMERICA,<br><br>　　　　　　　　Counter-Plaintiff,<br>v.<br><br>DONG WUK KIM, MYUNG IL YOUM, and FKCC,<br>　　　　　　Counter-Defendants | Bankruptcy Case<br>No. 15-52857 DM<br><br>Chapter 11<br><br><br><br><br>Adversary Proceeding<br>No. 16-5071 |

## MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' MOTION TO DISMISS

On January 25, 2017, this court held a hearing on the motion for summary judgment ("MSJ") filed by debtor and plaintiff First Korean Christian Church of San Jose ("FKCC" or "Debtor"), a non-profit religious California corporation, and the motions of the individual defendants Dong Wuk Kim ("DW Kim") and Myung Il Youm

(collectively, "the Kim Defendants") to dismiss this adversary proceeding ("MTD AP") and to dismiss the counterclaim filed by Korean Evangelical Church of American ("KECA") against them ("MTD CC") and Debtor.[1] For the reasons set forth below, the court will grant the MSJ and deny the MTD AP and the MTD CC.[2]

I.  BACKGROUND

FKCC filed the underlying chapter 11 bankruptcy case (the "Main Case") on September 3, 2015, and continues as debtor in possession.  FKCC and KECA were co-borrowers on a loan secured by church property located in Sunnyvale, CA (the "Property").  As of the petition date, BBCN Bank held the underlying note and a valid and perfected deed of trust lien on the Property.  BBCN Bank filed a motion for relief from stay ("MRS") on February 24, 2016; the Kim Defendants, identifying themselves as the True FKCC, filed a motion to dismiss the bankruptcy case ("MTD BK") two days later.

At a hearing on March 29, 2016, the court indicated that it would deny the MTD BK, holding that Debtor, through its current pastor, had the authority to file the chapter 11 petition and that DW Kim did not have authority to act on behalf of FKCC.  The order denying the MTD BK was entered on April 4, 2016, and the Kim Defendants filed a notice of appeal on April 13, 2016 (the "Appeal").  The Appeal is currently pending in the U.S. District

---

[1] Even though KECA was nominally identified as a defendant by FKCC and FKCC was nominally identified as a counter-defendant by KECA, their interests in this litigation align with each other, as discussed below.

[2] The court will make no ruling on the motions to remand Adv. Proc. 15-5139 and Adv. Proc. 15-5151 (the "Related APs") that were on calendar at the same time.

Case: 16-05071    Doc# 50    Filed: 02/21/17    Entered: 02/21/17 15:32:56    Page 2 of 14

Court for the Northern District of California as Case No. 16-cv-01959-EJD. A motion to dismiss the Appeal as interlocutory is pending in that matter.

The court continued the hearing on BBCN Bank's MRS to allow FKCC an opportunity to sell the Property for the benefit of the estate. FKCC thereafter obtained an order authorizing it to hire real estate brokers and, in July 2016, filed a motion to sell the Property free and clear of liens. The court entered an order on September 14, 2016, authorizing a sale of the Property for $6,650,000 and providing for payment in full of the BBCN Bank debt as well as all secured tax liens. The sale has closed.

Pursuant to the sale order, the various and conflicting interests asserted by Debtor, the Kim Defendants and KECA in the Property were transferred to the net proceeds of the sale (the "Net Funds"). The Net Funds were deposited into an interest-bearing joint account, disbursement from which requires the written consent of all parties or a judicial determination of the parties' respective rights in the funds. *See Order Granting Motion to Sell Real Property Free and Clear of Interests Combined with Motion to Sell Real Property* at Docket No. 117 in the Main Case.

On October 7, 2016, Debtor filed this adversary proceeding, alleging that it and KECA owned the Property and thus now own the Net Proceeds. KECA filed an answer seeking the same relief, and asserting the counterclaim against the Kim Defendants. Both parties requested that the Net Funds be released to the estate and to KECA. The Kim Defendants filed the MTD AP on December 10, 2016, and the MTD CC on December 14, 2017. Debtor filed its MSJ

on December 27, 2016. Because Debtor has established as a matter of law and undisputed fact that the estate and KECA are entitled to the Net Funds, the court is granting the MSJ and denying the MTD AP and the MTD CC.

II. <u>JURISDICTION</u>

The Kim Defendants erroneously contend that this court lacks jurisdiction to resolve the dispute as to the ownership of the Net Funds. This is a dispute over an identified sum of money in which the Debtor claims ownership. The court has jurisdiction and constitutional authority to determine whether identified property constitutes property of the estate under 11 U.S.C. § 541(a). *See, e.g. Waldron v. F.D.I.C. (In re Venture Financial Group, Inc.)*, 558 B.R. 386 (Bankr. W.D. Wash. 2016); *see also Velo Holdings, Inc. v. Paymentech, LLC (In re Velo Holdings, Inc.)*, 475 B.R. 367, 387–88 (Bankr. S.D.N.Y. 2012) ("[t]he determination whether something is property of the estate is a core matter") (collecting cases). In addition, turnover actions are core pursuant to 28 U.S.C. § 157(b)(2)(E). Here, Debtor is seeking a determination that the Net Funds are property of the estate which must be turned over to it. This court has core jurisdiction to resolve the disputed claims to the Net Funds. Inherent in such a resolution is the issue of who controls Debtor: DW Kim or an appointed successor.

The Kim Defendants also argue that the pendency of the Appeal deprives this court of jurisdiction to decide the MSJ. They are incorrect. Even though control of Debtor is a central issue in both the Appeal and this adversary proceeding, the court can enter a judgment as to disposition of the Net Proceeds. The appealed

-4-

order denying the motion to dismiss the chapter 11 case is interlocutory. *In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1379 (9th Cir. 1985). As the Ninth Circuit held in *In re Rains*, 428 F.3d 893, 904 (9th Cir. 2005), an appeal from an interlocutory order is premature and does not transfer jurisdiction to the appellate court absent leave of that court. *Id.*, citing *In re United States Abatement Corp.*, 39 F.3d 563, 568 (5th Cir.1994) (holding that premature notice of appeal from interlocutory bankruptcy order was of no effect and the trial court retains jurisdiction to enter final judgment) and <u>Albiero v. City of Kankakee, 122 F.3d 417, 418 (7th Cir.1997)</u>.

The Kim Defendants have also suggested that this court lacks jurisdiction to resolve the dispute over entitlement to the Net Funds as it implicates matters of religious doctrine and practice. This court undoubtedly must "defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." *Jones v. Wolf*, 443 U.S. 595, 602 (1979). Nonetheless, "the First Amendment does not dictate that a State must follow a particular method of resolving church property disputes. Indeed, 'a State may adopt any one of various approaches for settling church property disputes so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith.'" *Id.* Thus, this court cannot review decisions to excommunicate, a religious matter, or matters involving religious doctrines and tenets. It can, however, apply "neutral principles of law" such as corporate governance in settling disputes as to ownership of church property

-5-

as long as the analysis does not involve inquiry into religious doctrine. *Id.* at 602-03.

Consequently, this court can consider the relevant by-laws as well as minutes and orders from governing bodies to determine whether a particular faction controls the Debtor and its property disposition. Such a determination does not invoke religious precepts but is instead a secular examination of documents of governance.

The Kim Defendants also assert that they are entitled to a trial by jury and thus this court cannot issue a dispositive ruling. Assuming without deciding that they are entitled to a jury trial, that entitlement does not preclude this court from ruling on the MSJ or the MTD AP. In *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com),* the Ninth Circuit adopted the majority rule that the valid right to a jury trial does not require the bankruptcy court to cede jurisdiction and transfer the action immediately, but instead may retain jurisdiction over the action for pretrial matters (such as motions to dismiss or motions for summary judgment) until the matter is ready for trial. *Id.* at 788 ("allowing the bankruptcy court to retain jurisdiction over pre-trial matters, does not abridge a party's Seventh Amendment right to a jury trial").

IV. <u>STANDARDS FOR SUMMARY JUDGMENT</u>

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), applicable here by Fed. R. Bankr. P. 7056. The moving party "initially bears the burden of proving the absence of a

Case: 16-05071    Doc# 50    Filed: 02/21/17    Entered: 02/21/17 15:32:56    Page 6 of 14

genuine issue of material fact." *In re Oracle Corp. Sec. Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (citation omitted).

As discussed below, Debtor has established as a matter of undisputed fact that it is the governing entity entitled to recovery of the Net Funds and the Kim Defendants have not set forth any material fact that reflects a genuine dispute as that entitlement. Drawing all <u>reasonable</u> inferences from the evidence offered by the Kim Defendants in response to the MSJ AP, the court concludes that summary judgment in favor of Debtor is appropriate.

V. <u>UNDISPUTED MATERIAL FACTS</u>

-7-

On May 29, 2008, Debtor entered into a membership agreement with KECA; that agreement required that Debtor comply with the bylaws of KECA and to place KECA as a title holder of the Property. *See* Declaration of Chong Kon Cho ("Cho Decl.") ¶ 3; Exhibit 1); Declaration of Nam W. Kim ("NW Kim Decl.") ¶ 6. In the same year, Debtor and KECA executed the loan documents providing Innovative Bank (subsequently taken over by BBCN) with a deed of trust lien on the Property. NW Kim Decl. ¶ 3; Exhibits 3 and 4 to Cho Decl.

KECA is nationally subdivided into multiple district conferences. The KECA district conference responsible for the Debtor is the Northern California District Conference ("NCDC"). Cho Decl. ¶ 6. Because KECA's by-laws superseded the prior by-laws of Debtor, Debtor's Board of Directors, upon deeming certain conduct of its then presiding pastor (DW Kim) were contrary to the morals of the church, requested in July 2012 that KECA (through the NCDC) suspend him from his position as senior pastor. NW Kim Decl. ¶ 10. The disciplinary proceedings were to be completed in accordance with the disciplinary laws of KECA. Cho Decl. ¶¶ 7-10, Exhibit 8. NW Kim Decl. ¶ 10.

In August 2012, the NCDC suspended DW Kim's ministry duties until disciplinary hearings were concluded and appointed Sang Kook Lee as a temporary governing pastor. NW Kim Decl. ¶ 11; Cho Decl., Exhibits 5 and 6). On September 14, 2012, the NCDC Disciplinary Committee excommunicated DW Kim and stripped him of

-8-

Case: 16-05071    Doc# 50    Filed: 02/21/17    Entered: 02/21/17 15:32:56    Page 8 of 14

all ministry duties.[3] NW Kim Decl. ¶ 12; Cho Decl., Exhibit 7. September 14, 2012, counsel for Debtor sent a letter to DW Kim terminating him as pastor. NW Kim Decl. ¶¶ 12-13; Exhibits 3 and 4. On September 17, 2012, NCDC issued an official notice that DW Kim was excommunicated and stripped of all powers regarding the church and that two elders Myoung I. Youm and Jin-Gook Kim were suspended from their duties. NW Kim Decl. ¶ 15; Cho Decl., Exhibit 8.

On November 1, 2012, DW Kim filed an appeal to the KECA national body. Cho Decl. ¶ 8. The excommunication decision remained effective pending appeal. Cho Decl. ¶ 13, Exhibit 20. On November 13, 2012, the General Assembly of KECA prepared a document entitled "The Ruling Statement of the Judgment Committee" stating:

> Since there is an illegality matter on the judgment procedure and the fact that there is not evidence beyond a reasonable doubt on the criminal acts of [DW Kim], we request that you annul the ruling from the original trial and propagate [DW Kim's] innocence.

DW Kim Decn., Exhibit 5, part 2(B). This unsigned document reflects a recommendation by the Judgment Committee that the Regional Council vacate the excommunication order in accordance with Article 5 (Paragraph 7) and Article 3 (Paragraphs 6 and 7) of the Judgment Committee Operation Regulation, and Article 20 of the

---

[3] As noted in the Jurisdiction discussion above, excommunication is a matter pertaining to religion and is not appropriate for court involvement. However, the issue of whether DW Kim remained as pastor is a secular matter involving principles of corporate governance and thus falls within the scope of this court's jurisdiction to determine who controls Debtor and what constitutes property of the estate under section 541 of the Bankruptcy Code.

-9-

Disciplinary Action Regulation. *Id.* at 3(b)(1) and (2).

DW Kim has offered the "Ruling Statement of the Judgment Committee" in an effort to establish a dispute as to a material fact, i.e., whether he was stripped of his position as pastor. As noted above, however, the Kim Defendants have not authenticated the report by a declaration from any member of the committee that the report was in fact adopted by the Assembly. But even if a signed, authenticated report existed, it would not have been final and would have been subject to further review of the Regional Council.

On February 19, 2013, the NCDC notified DW Kim that his appeal to the General Assembly did not overturn the termination of his services as pastor. Cho Decn., Exhibit 10. It denied DW Kim access to the Property and to the podium and dispatched Sang Kook Lee to serve as the governing pastor. *Id.*

Thereafter, and quite significantly to the issues before the court, the Special Judgment Committee met during the annual meeting of KECA in April 2013 to determine the appropriate disciplinary actions to be taken with respect to DW Kim. Cho Decn., Exhibit 11. On April 10, 2013, the Special Judgment Committee issued its judgment finding DW Kim guilty of the charges against him and dismissing him from his position as a pastor, consistent with the NCDC decision to strip him of his ministry duties. Cho Decn., Exhibit 12; Decl. of Nam W. Kim at ¶¶ 20-21. Thus, regardless of the status of the "first deliberation" by the General Assembly and regardless of the status of his excommunication from membership, DW Kim was no longer the pastor of FKCC as a matter of corporate law.

Accordingly, on September 16, 2013, KECA notified its Northern California District Office of the Notice of Judgment by the Special Disciplinary Committee regarding its decision to dismiss DW Kim as pastor. Cho Decn., Exh. 14.[4] The decision and order, which was sent with the Notice of Judgment, concluded:

> Therefore, based on the state[d] reasons, and based on the Article 4, Section 1 of the Law of Disciplinary Punishment, [and] according to the Article 5, Section 3 (Dismissal from Office) of the Law of Disciplinary Punishment, the Special Disciplinary Committee hands down the Judgment of Dismissal from Office to the appealer, Mr. Dong Wuk Kim.

*Id.*

In November and December 2013, after he was stripped of his duties and rights as pastor, DW Kim and his supporters convened several meetings at which some church members voted to withdraw from membership in NCDC and KECA. Cho Decn. ¶¶ 22-23, Exhibit 16. However, as he had been formally terminated as pastor of FKCC months before these meetings, such withdrawal was ineffective and against existing regulations and rules of operation. *Id.* Despite the continued eviction efforts of KECA and Debtor, DW Kim and his supporters continued to occupy the Property. Cho Decn. ¶ 23, Exhibit 17. While the supporters of DW Kim (the "DW Kim Faction") warred with KECA and Debtor, Debtor was unable to pay BBCN Bank as required by the loan documents. Declaration of Kelly Cho in Support of BBCN Bank's Motion for Relief from Stay ¶¶ 24-29, Docket 58-3 in the Main Case. Faced with a possible foreclosure, Debtor filed its chapter 11 petition. The DW Faction moved for dismissal of the case, asserting that it was the true

---

[4] The exhibits to the Cho Declaration are out of order, with Exhibit 17 preceding Exhibit 14. Exhibit 14 can be found at Docket No. 26-9, pages 30-34.

church and that Debtor lacked authority to commence the underlying bankruptcy case. *See Motion to Dismiss Pursuant to 11 U.S.C. §§ 1109 and 1112(a),* Docket No. 61 in the Main Case. The court disagreed and denied the dismissal motion for the reasons set forth on the record on March 29, 2016.

VI. <u>ANALYSIS</u>

In support of its MSJ, Debtor has presented undisputed evidence that it and KECA share title on the Property and are both signatories to deeds of trust under which the Property secured the obligations of Debtor to BBCN Bank. Moreover, as set forth in the Undisputed Material Facts section above, Debtor has presented significant and verified evidence that DW Kim was stripped of his position as the official pastor for Debtor in 2013. In other words, Debtor met its initial burden of showing the absence of a material and triable issue of fact as to DW Kim's ouster and its entitlement to the Net Proceeds through control of Debtor by its current pastor.

Given that Debtor met its initial burden on the MSJ, the Kim Defendants had to come forward with evidence demonstrating that there are genuine issues of material fact to be decided at trial. A fact issue is "genuine" if there is enough evidence for a reasonable trier of fact to make a finding in favor of the non-moving party. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). A fact is "material" if, "under the governing substantive law ... it could affect the outcome of the case." *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 760-61 (9th Cir. 2008) *(quoting Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Savs. Ass'n*, 322 F.3d 1039, 1046 (9th Cir.

2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986))).

Here, the Kim Defendants have not presented a "genuine" issue of material fact which could result in a jury reasonably finding in their favor. First, the Kim Defendants' primary argument is that KECA reversed the disciplinary rulings of the NCDC and thus DW Kim retains his authority as the pastor of Debtor. As discussed in the Undisputed Material Facts section above, however, the document upon which the Kim Defendants rely is not signed and has not been authenticated. Moreover, in subsequent rulings, KECA upheld the disciplinary findings against DW Kim and reaffirmed his removal as pastor of Debtor. Furthermore, the Kim Defendants' unilateral efforts to negate the excommunication order by disclaiming Debtor's membership in KECA are ineffective and contrary to governing rules of operation and governance. The Kim Defendants have not set any other cognizable arguments that they, and not the current pastor of Debtor, D.Y. Kim, are entitled to control the Debtor and the Net Proceeds.[5]

## VII. CONCLUSION

Because Debtor has shown that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the court will enter an order granting the MSJ, orders denying the MTD AP and the MTD CC, and a judgment releasing the Net Proceeds to Debtor and KECA. Counsel for Debtor should upload orders granting the MSJ and denying the MTD; KECA should submit an

---

[5] At the hearing on January 25, 2017, counsel for Debtor conceded the obvious, namely that if the court granted the MSJ, Debtor's disposition of the Net Proceeds would be governed by applicable bankruptcy and non-bankruptcy law.

-13-

order denying the MTD CC.  The orders should reflect that the relief is being granted (or denied) "for the reasons set forth in the Memorandum Decision entered on [Date] at {Docket Number}."  Upon entry of these orders, counsel for Debtor and KECA should submit a single judgment on the complaint and the counter-complaint.  When uploading the orders, counsel for Debtor and KECA should file on the docket a proof of service indicating that they have served the proposed orders and judgment on counsel for the Kim Defendants, or the orders should reflect opposing counsel's agreement as to form.[6]

*** END OF MEMORANDUM DECISION ***

---

[6] Based on comments by Debtor's counsel at the hearing, the court assumes Debtor will now dismiss the Related APs, rendering the motions to remand moot.  If that is not the case, counsel should set them for status conference on the court's regular San Jose calendar.